ZORA LANYON DAMERON, Appellant, v. MARTHA J. LANYON, Administratrix.

**Division One, June 1, 1911.**

1. **WILL: Construction: Intention.** To aid courts in interpreting wills that are obscure in their meaning, all other rules of construction are subject to the governing principle that the intention of the testator is the main fact to be ascertained, and that to find that intention the whole will is to be read.

2. ————: **Contingent on Death Before Distribution.** A clause in a will by which property is given to a child absolutely, with a limitation over in case the child shall die before receiving his legacy, refers primarily to the child's death before the legacy is received by him in cash, whether he die before or after the testator. But if he die after the testator, and there is nothing in the will to indicate that the testator, in referring to the death of the child before he might receive his legacy, had in mind any other event than his own death, then the will will be construed as meaning the death of the child before the death of the testator; but if on reading the whole will it appears that the testator had in mind the death of said

child, then the will will be construed as meaning the death of such legatee before coming into possession of his estate, even though the testator has seen fit to subject the gift to the hazzard of accident or delay caused by the wilful or negligent conduct of the executor in making distribution.

3. ———: ———: **Before He or She Shall Have Received His or Her Share.** The will gave to testator's wife what she would have received had he died without will, and the residue he gave to his five children "to be divided equally among them," and then said: "Should either of my children die without issue before he or she shall have received his or her share of my estate, the share of such deceased child shall be equally divided among his surviving brothers and sisters." *Held*, that if this were the whole of the will, it would be held that the residuary clause referred to the death of the child before the testator's death, and the will would be construed to mean that the child who survived him was at his death vested with the legacy. But where the will goes on to name his wife as sole executrix, without bond, and directs her to keep the estate together for an indefinite number of years, and to use the income as she might see fit, and especially in maintaining a home for herself and the children, all of whom were then minors, and to authorize her to sell any part of the property "whenever in her opinion it may seem expedient to do so," and to make only "such advances to my said children at such times and in such amounts as in her opinion will be for their best interests," and then to say, "It is my desire that my said executrix shall have and exercise the same discretion as to the time and manner of the distribution of my estate that I would have if living," it will be *held*, that no estate at testator's death vested in one of the children who died without issue within ten months after testator died, as to so much of the estate as the child had not come into possession of. The said child's estate was contingent upon his receiving it before his own death, and hence as he had not come into possession of it his administrator is not entitled to one-fifth of testator's residuary property, and his young widow has no right to any of testator's estate that remains in the hands of the executrix.

4. ———: **Unjust and Unreasonable.** Even though the court should consider the will unjust and unreasonable, yet the owner of property has the right to dispose of it as he pleases, and if he pleases to keep it in his family, limiting the succession to his children and grandchildren, he has the right, under the statutes, to do that.

5. ———: **Determinable Estate: Dower: Inventory.** Where the wife of a deceased legatee brings suit against his administrator and the executor of his father's will to compel the inventory of a certain portion of his father's estate, and it is held that

Dameron v. Lanyon.

her husband was given nothing by the will, the question of whether her husband was seized, under the will, during his marriage to plaintiff, of a base or determinable fee, and the question of whether such a fee, created by will, is an estate of inheritance, whereof the widow is entitled to dower, is not in the case. If it was a determinable fee it determined on the death of her husband, and as the property does not belong to his estate it should not be included in the administrator's inventory.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Thomas & Hackney* for appellant.

(1) The interest devised to Clyde B. Lanyon under the will of his father vested immediately on the death of his father. Redell v. Collier, 40 Mo. 287; Burn v. France, 131 Mo. 63; Simmons v. Cabanne, 177 Mo. 336; Chew v. Keller, 100 Mo. 362; Lippincott v. Stottseberg, 47 N. J. Eq. 21. When devises or legacies have once vested, they will not be divested by any doubtful implication. Conditions which defeat estates are looked upon with disfavor and when the meaning is not clear a construction as nearly as possible in conformity with the general rules of inheritance will be adopted. 30 Am. and Eng. Ency. Law, 796. (2) Under the clause of the will of Reuben S. Lanyon, deceased, in which he devises to his wife, Martha J. Lanyon, such a share in his estate as she would take under the laws of the State of Missouri, if he died intestate, and that all the rest and residue of his estate real, personal and mixed, he devised to his four children, share and share alike, but that if either of his children die without issue before he or she receive his or her share of his estate, then that it should go to the survivors, the share devised to Clyde B. Lanyon vested in him and was received by him immediately on the death of the testator. Cook v. McDowell, 52 N. J.

Eq. 351; In re Wengerd's Estate, 143 Pa. St. 615; Hutcheon v. Mannington, 1 Ves. Jr. 366; Johnes v. Beers, 57 Comm. 295; Burk v. Barrett, 67 N. E. (Ind.) 552; Miller v. Colt, 32 N. J. Eq. 6; Ill. Land & Loan Co. v. Bonner, 75 Ill. 315; Bruner v. Cooper, 2 Am. Law Journal, 188. (3) It is apparent from the will that the testator, having provided for his wife in accordance with the laws of the State of Missouri, had in his mind a provision for his four minor children and with that purpose in view he devised and bequeathed unto his four children, naming them, all the residue and remainder of his estate to be equally divided among them. He also provides that a portion of the devise to his son, Clyde B. Lanyon, should be turned over to him as soon as possible after he arrived at the age of twenty-one; that he be let into the possession of the eighty acre tract of land devised to him and that he also be given the shares of stock or the proceeds of the sale thereof, and that the balance should be held until in the opinion of his executrix the same should be given to him. He further provided that his executrix shall from time to time make advances to his children of parts of their several distributive shares of the estate and that she should keep an accurate account of all such advancements made by her, so that each shall receive no more than his distributive share of the estate. No title or interest whatever is vested in the executrix, but she is permitted to keep the property intact and to use the income therefrom, if necessary, for the support of the children as long as any of them remain minors, the testator frequently expressing a desire, however, in his will that his executrix should turn over or pay over portions of their shares from time to time, keeping an accurate account thereof. The provision that she should keep the property intact was not for the benefit of the executrix, but for the benefit of the devisees and legatees. It was not her property she was to keep and hold under the will,

but the property of the testator's children.  She was given authority to hold the property for the benefit of the children and distribute it from time to time until the youngest child should attain his majority, when, under the spirit of the will, final distribution of the estate was to be made by the executrix.  (4). The word "received" when used as in the sentence, "Should either of my children die without issue before he or she shall have received his or her share of my estate, the share of such deceased child shall be equally divided among his surviving brothers and sisters, but if such child shall leave him surviving him a child or children, such child or children shall receive its parent's share," when used in a will, has a technical and well-defined meaning.  Words and Phrases, 5992.  And in the common understanding as well as in the contemplation of the law, the devisee of an estate in fee simple absolute received that estate at the moment when he became entitled to receive it.  And the law presumes that the testator used the word in its technical and legal sense.

*H. S. Miller* and *McReynolds & Halliburton* for respondent.

(1)  All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator in all matters before them.  R. S. 1899, sec. 4650; Grace v. Perry, 197 Mo. 559. What are ordinarily known as technical rules for construing wills should be disregarded when they conflict with the manifest intention of the testator.  Mead v. Jennings, 46 Mo. 91; Suydam v. Thayer, 94 Mo. 48; Drake v. Crane, 127 Mo. 85; Metz v. Wright, 116 Mo. App. 631; 29 Am. and Eng. Ency. Law, 849; Schultz v. Coon, 51 Wis. 416; Hollenbeck v. Getz, 63 Conn. 385.  (2)  The true intent and meaning of Reuben S. Lanyon, by the use in his

will of the words, "Should either of my children die without issue before he or she shall have received his or her share of my estate, the share of such deceased child shall be equally divided among his surviving brothers and sisters, but if such child shall leave him surviving a child or children, such child or children shall receive its parent's share," when taken in connection with the other clauses of the will evidently meant by the words "shall have received" actual possession and control of his or her share. In other words, physical receipt. A reading of the will and its various clauses impresses upon the mind that, after giving certain property to Clyde when he was 21, the balance was to be kept and handled by the executrix to maintain a home and support the minor children, with a discretion as to when and what advancements she should make, if any, and that, if any child died before actual receipt of his part, without child or children surviving him, then his part should go to his brothers and sisters. And that, by the terms, "shall have received," he meant actual, physical receipt or possession. Any other construction would violate his intention, which was to keep the property in his own descendants. Jarman on Wills (5 Amer. Ed.), p. 617, especially Par. 11, p. 640; also pp. 578 and 668. 1 Underhill on Wills, secs. 343, 344, 345, 348 and 350. LeJeune v. LeJuene, 2 Kern. 701; Ewing v. Winters, 34 W. Va. 23; Hutchins v. Pearce, 80 Md. 434; Summers v. Smith, 127 Ill. 645; Hollister v. Butterworth (Conn.), 40 Atl. 1044; Mead v. Maben, 131 N. Y. 255; Galloway v. Carter, 100 N. C. 111; Hoadley v. Wood (Conn.), 42 Atl. 263; In re Spencer, 16 R. I. 25; Rammell v. Gillow, 15 L. J. ch. 35; 9 Jur. 704; sec. 346, Underhill; Summers v. Smith, 127 Ill. 645; Marshall v. Marshall, 42 S. C. 436; Williams v. Lewis, 100 N. C. 142; Hulbert v. Emerson, 16 Mass. 244; Olney v. Hull, 21 Pick. 311; Den v. Sayre, Pen. (N. J.), 596; Seddel v. Willis, Spencer, 223; Williamson v. Chamberlain, 2

Stockt. 373; Branson v. Hill, 31 Md. 181; Anderson v. Smoot, Speers Eq. 312; Sinton v. Boyd, 19 Ohio St. 30; Slack v. Bird, 8 C. E. Gr. (N. J.), 238; Holcombe v. Lake, 4 Zab. 686; Couch v. Gorham, 1 Conn. 36; Westbrook v. Romeyn, Baldwin, C. C. 196; Tucker v. Stites, 10 Geo. (Miss.) 196; Robertson v. Wilson, 38 N. H. 48; Morton v. Morton, 8 Barb. 18; Matter of Ryder, 11 Raige 185; Smith v. Block, 29 Ohio St. 488; Wren v. Hynes, 2 Met. (Ky.) 129; Clark v. Clark, 3 Bradf. 32; 3 Jarman on Wills, p. 640. (3) The provisions of the will of Reuben S. Lanyon, as to the interest of Clyde B. Lanyon can only be construed in one or two ways: 1st. That Clyde B. Lanyon took a life estate in the property willed, subject to become a full estate and right thereto by actual receiving possession or control of all said property so bequeathed and devised to him before his death, or by leaving a child or children surviving him at his death: 2nd. That the estate was vested in interest in Clyde B. Lanyon, subject to be devested in case he should die without having received possession or control of the same and without leaving surviving him a child or children.

The above propositions are sustained in the following cases: Harbison v. Swan, 58 Mo. 147; Naylor v. Dodman, 109 Mo. 543; Yocum v. Siler, 160 Mo. 281; Gannon v. Albright, 183 Mo. 239; Grace v. Perry, 197 Mo. 561; McCune v. Goodwillie, 204 Mo. 337; Tebow v. Daugherty, 205 Mo. 326; Sumpter v. Carter, 115 Ga. 893; McGurry v. Wall, 122 Mo. 614; Britton v. Thornton, 112 U. S. —: 28 L. Ed. 817; Andrews v. Sargent, 71 Vt. 257.

*Thomas & Hackney* for appellant in reply.

The respondent's learned counsel practically concede in their brief that Clyde B. Lanyon, under the will of his father, was seized during his marriage to appellant of a base or determinable fee, in any event,

but claim that if he died without issue before the devise was turned over and received into his actual possession, the executory limitation over to his surviving brother and sisters became operative and that appellant no longer had any interest; but that is not the case. Sec. 345, R. S. 1909. A base or determinable fee created by will is an estate of inheritance. 1 Washburn on Real Property (3 Ed.) p. 248. It is now well settled by the weight of authority that where there is a devise in fee simple with an executory devise over, the wife's right to dower attaches on the first estate and is not defeated on its determination. 10 Am. and Eng. Ency. Law, 161; Smith v. Spencer, 2 Jur. N. S. 778; Kennedy v. Kennedy, 29 N. J. L. 185; Pollard v. Slaughter, 92 N. C. 72; Evans v. Evans, 9 Pa. St. 190; Moody v. King, 2 Bing. 447; Jones v. Hughes, 27 Gratt. (Va.) 560; Rice v. Rice, 133 Ky. 406; 14 Cyc., p. 906, par. "e;" Jackson v. Kip, 8 N. J. L. 241; Webb v. Trustees, 90 Ky. 117. Had a child been born to appellant and Clyde B. Lanyon, the child of appellant would have inherited the estate devised by Reuben S. Lanyon to Clyde B. Lanyon; and by the executory devise over, if it ever became operative, the brother and two sisters of Clyde B. Lanyon would take the same subject to the dower interest of appellant, together with all the statutory incidents in force in this State on the death of her husband. So that we maintain that in any event, it was the duty of the administratrix of Clyde B. Lanyon to inventory the one-fourth interest of Clyde B. Lanyon in the estate of his father and that the court erred in finding and adjudging otherwise.

*H. S. Miller* and *McReynolds & Halliburton* for respondent in reply.

(1) Clyde B. Lanyon was not seized of an estate of inheritance in the property described in appellant's motion filed in the probate court and described in the

evidence in the trial of the cause, but by the terms of the will of Reuben S. Lanyon, his interest was a determinable estate, or a qualified or conditional fee, or a base fee, that is an estate less than a fee to which dower does not attach in this estate. McCune v. Goodwillie, 204 Mo. 337; Tebow v. Daugherty, 205 Mo. 326. (2) The estate willed to Clyde B. Lanyon by his father never vested. The vesting was postponed by the very terms of the will and he had no estate of inheritance and his widow is not entitled to dower. Starr v. Willoughby, 218 Ill. 485; Kearney v. Nicholson, 67 S. W. 361; Brookhouse v. Pray, 92 Minn. 448; In Spencer's Petition, 16 R. I. 25; People use of Jennings v. Jennings, 44 Ill. 488. (3) While it is true that the law favors the vesting of estates, still, where it is clear from a reading of the entire will that testator intended to postpone the vesting of an estate until the period of distribution has arrived, that intention will be carried out. John v. Askey, 190 Ill. 58; Starr v. Willoughby, 218 Ill. 485; Patterson v. McCune, 14 N. Y. 385; Kearney v. Nicholson, 67 S. W. 361; March v. March, 186 N. Y. 99. (4) Our courts have construed Sec. 345, R. S. 1909, as to meaning of the words "seized of an Estate of Inheritance" to entitle a widow to dower. "That the husband must have been actually seized (that is in actual possession) or have had a legal seizin with a present right of possession." Gentry v. Woodson, 10 Mo. 225; Warren v. Williams, 25 Mo. App. 24; Martin v. Trail, 142 Mo. 94; Von Arb v. Thomas, 163 Mo. 41; Edward v. Bibb, 54 Ala. 475.

VALLIANT, J.—Appellant is the widow of Clyde B. Lanyon who died intestate September 19, 1903, and respondent is the administratrix of his estate. Respondent is also the executrix of the will of Reuben S. Lanyon, deceased, who was the father of Clyde B. Lanyon, and who died testate, December 28th, 1902. Appellant filed a motion in the probate court of Jas-

per county to require respondent, as administratrix of the estate of Clyde B., to include in her inventory an undivided one-fourth of the real estate of which Reuben S. Lanyon died seized, subject to the widow's dower, and a one-fifth interest in his personal estate, she averring that such was the share which Clyde B. owned at the time of his death in the estate of Reuben S. Lanyon. The administratrix answered the motion, denying that Clyde B., at the time of his death, owned any part of the estate left by his father. The matter came on for hearing in the probate court and resulted in overruling the motion; the widow appealed to the circuit court where the issues were tried anew; the trial resulted in a judgment against her, overruling her motion, and from that judgment she appealed.

The adjudication of the rights of the parties in issue depends on the construction to be placed on the will of Reuben S. Lanyon. That will, or so much thereof as is material to the issue, is as follows:

"It is my will that my wife, Martha J. Lanyon, have the same share, right, title and interest, in and to my property, real, personal and mixed, as she would have taken under the laws of the State of Missouri, had I died intestate.

"All the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath unto my four children, namely: Clyde B. Lanyon, Edith E. Lanyon, Shirley May Lanyon and Lavon Lanyon, to be equally divided among them; should either of my children die without issue before he or she shall have received his or her share of my estate, the share of such deceased child shall be equally divided among his surviving brothers and sisters, but if such child shall leave him surviving child or children, such child or children shall receive its parent's share.

"I have heretofore purchased the eighty-acre tract of land hereinafter described, and I have also

purchased some shares of stock in the Walker-Lanyon Oil Company, of Joplin, Missouri. This property I purchased for my son, Clyde B. Lanyon, although I have taken the title thereto in my own name. The tract of land is worth two thousand dollars, and the shares of stock are worth twelve hundred and eighty-five dollars.

"I give, devise and bequeath unto my son, Clyde B. Lanyon, the said eighty-acre tract of land, the description of which is the south half of the southwest quarter of section number six, in township twenty-six, range number thirty-three, in Newton county, State of Missouri.

"I also give and devise unto my said son Clyde all of my shares of stock in the Walker-Lanyon Oil Company, of Joplin, Missouri, together with all my right, title and interest in and to the property of said Walker-Lanyon Oil Company, of Joplin, Missouri, but said property is to be considered as an advance to him of a part of his share as a residuary legatee and devisee under this will, and the same is to be charged to him as of the value of three thousand, two hundred and eighty-five dollars. The above described real estate and personal property are to be turned over to said Clyde B. Lanyon when he arrives at the full age of twenty-one years.

"If the shares of stock in said Walker-Lanyon Oil Company be sold during my lifetime, then said Clyde is to have in lieu thereof the price which they bring, whatever that may be. If they sell for a greater price than $1285, my said son shall have the benefit thereof, and should they be sold for a less sum, the loss is to fall upon him.

"I hereby nominate, constitute and appoint my wife, Martha J. Lanyon, as a sole executrix of this my last will and testament and reposing the fullest confidence in her integrity and in her ability to wisely

manage my estate it is my will that no bond whatever be required of her.

"I give unto my said executrix full power and authority to compound, compromise and settle any and all claims against or in favor of my said estate. I also give her full power and authority to grant, bargain, and sell any part of the property, real or personal, belonging to my estate whenever in her opinion it may seem expedient to do so, and I give to my said executrix full power and authority to execute, acknowledge and deliver deeds of conveyance of the same.

"It is my desire that my wife maintain a home for and support my children during their minority, and that she may do so she may use the income of my estate for that purpose.

"It is my will that my said son, Clyde B. Lanyon, be let into the possession of the eighty-acre tract of land above described as soon as possible after he arrives at the age of twenty-one years, and that at the same time he also be given said shares of stock in said Walker-Lanyon Oil Company, or the proceeds of the sale thereof, if they shall have been sold, but he shall receive no further part or share until in the opinion of my executrix the same should be given to him.

"It is my desire that my executrix shall from time to time make advances to my children of parts of their several distributive shares of my estate, and she shall keep an accurate account of all such advances made by her so that each shall receive no more than his distributive share of my estate.

"In order that my estate may be put to the best possible use by my said children, I hereby authorize my said executrix to hold the same and only make advances to my said children at such times and in such amounts as in her opinion will be for their best interests.

"It being my desire that my said executrix shall have and exercise the same discretion as to the time

and manner of the distribution of my estate that I
would have if living.

"It is my desire that my executrix should keep
the property of said estate invested in such a manner
as to derive an annual income therefrom, and she is
authorized to use the income therefrom for the main-
tenance of a home and for the support of such children
as are minors.

"In witness whereof, I have hereunto set my hand
and seal this 23rd day of September, A. D. 1901."

Testator died in December, 1902, leaving his
widow and four children, Clyde B., who was the eldest,
and three daughters, the eldest of whom, in December,
1902, was eighteen, and the youngest three years old;
they are now living. At the date of the execution of
the will, Clyde B. was twenty years old; he became
twenty-one in January, 1903, and died in September,
1903, leaving a widow, who is the appellant, but no is-
sue. After the death of Reuben S. Lanyon, the execu-
trix gave Clyde possession of the eighty acres willed
to him, and sold the Walker-Lanyon Oil Company
stock for $1280, taking the purchaser's notes secured
by the stock as collateral; she took the notes and gave
Clyde the money for the same; she gave him in fact
$1500, which was more than the stock sold for. She
did this to enable him to go into business, and loaned
him $1000 besides, and when he got married she gave
him four, five or six hundred dollars to set him up in
housekeeping. Until he married he lived with his
mother, and she supported him out of the estate, and
from time to time advanced him money as he needed
it, the exact amount not shown in the evidence.

The inventory of the Reuben S. Lanyon estate
filed in the probate court showed a considerable quan-
tity of land, besides the eighty acres above mentioned,
and also a considerable personal estate, the exact
value of which is not given in the record, as the ap-
praisement is not here, but taking the items men-

tioned in the inventory at their face value, we gather that the personalty was perhaps $50,000.

In her inventory as administratrix of Clyde's estate, respondent included the eighty acres, but nothing more as from the father's estate.

Appellant, as widow of Clyde, filed in the probate court her election to take one-half the estate, and also filed same in recorder's office within less than one year after the death of her husband.

The decision of this case turns on the interpretation to be given the following part of the residuary clause: "Should either of my children die without issue before he or she shall have received his or her share of my estate, the share of such deceased child shall be equally divided among his surviving brothers and sisters." The words especially in dispute are, "before he or she shall have received his or her share of my estate." Do those words mean, before he or she shall have been put in the actual possession of his or her share, or do they mean before he or she shall have become entitled to the actual possession, and, if the latter, when, under other clauses of the will, would he or she become entitled to possession? Were those words designed to provide against a contingency of the death of a child occurring after the death of the testator and before actual distribution of the estate, or were they designed only to provide against a contingency of the death of a child before the death of the testator? Respondent contends for the former and appellant for the latter construction; the trial court construed the clause to refer to the contingency of the death of a child after the death of the testator and before he or she came into actual possession of his or her share.

I. To aid courts in interpreting wills that are obscure in their meaning, some general rules of construction have been laid down, but they are all subject to the

governing principle that the intention of the testator is the main fact to be ascertained, and that to find that intention we must read the whole will.

A learned law-writer on this subject has said: "Testamentary language referring to the death or to the survivorship of beneficiaries, whether named as individuals or comprised in a class, presents some of the most difficult problems of construction." [Underhill on Wills, sec. 341.]

In the next section the same author says: "Where there is an immediate gift in the will to A., and a disposition of the property to another *in case of his (A's) death,* or *in the event of* his death,' or with any similar expression referring to the death of A., not as an event which is *certain to occur,* but as a contingent event, no time being mentioned, the gift over will take effect only if A. shall *die during the lifetime of the testator.* So, also, where the gifts are immediate to several individuals, and *in case of the death of any in the lifetime of the others,* then over, those who survive the testator take at once absolutely."

The reason for the rule there stated is clear; the testator, in the case contemplated, provides for a remainder over on the occurrence of a contingency, but death is not a contingency, it is a certainty; therefore, in the case put, if the will were construed to mean that the remainder was to take effect on the death of A., whensoever it might occur, A. would take a life estate if he survived the testator and the remainder over would be a vested estate. Therefore, when the testator in his will refers to the death of the primary beneficiary in words that indicate that the event he has in mind is an uncertainty, he is presumed to mean a death occurring before some other event, and if there is nothing in the will to indicate what that other event is, the law presumes that the reference is to the contingency of the death of the primary beneficiary be-

fore that of the testator. But if the will contains words that show that the testator's intention was to provide for a contingent remainder or executory devise, in the event of the death of the primary beneficiary occurring before some other event, which might occur after the death of the testator, then the presumption above mentioned is overcome, and the testator's intention in that respect must govern, that is to say, if the event other than the testator's own death appears from the will, then we must say that the testator meant the death of the primary beneficiary before the occurrence of that other event.

The text-writer already quoted in section 343 says: "Clauses by which property is given to A. absolutely, with a limitation over in case A. shall *die before* receiving his legacy, primarily refer to his death before it is actually received by him in cash, whether he die *before or after* the death of the testator. Though A. may survive the testator, the legacy to him is contingent upon his surviving to receive it. . . . The difficulty in construing these limitatons over is most striking when they depend upon death *simpliciter, without having received the legacy,* the testator having omitted all words which would indicate that he meant *actual receipt.*"

This subject is discussed also in 2 Jarman on Wills (6 Ed.), p. 746, whence the author says: "Executory gifts over in the event of the legatees dying before 'receiving' their legacies have given rise to much litigation. Actual receipt may be delayed by so many different causes that the court is unwilling to impute to the testator an intention to make that a condition of the legacy and thus indefinitely postpone the absolute vesting of it." But in the course of the elaborate discussion which follows that statement the author at page 751 says: "Hitherto it has been assumed that if the testator clearly intends the legacy to be divested unless actually received by the legatee

such intention will prevail.  Such was clearly the opinion of Lord Eldon, Sir W. Grant, and Sir J. Leach.''
We quote again from Underhill, sec. 343: ''Where it is clearly apparent that the testator intended that the legatee should be at the risk of losing what he gave him through the delay or the caprice of the executor, or through accident, as in case it is expressly provided that if the legatee should die before he shall have 'actually received his legacy' the part 'he has not actually received, whether payable or not' is to go to another, the intention must be respected.  The gift over is not invalid for its uncertainty, merely because it is within the power of the executor to defeat the intention of the testator respecting it, by a prompt payment of the legacy, if it is clear that the testator intended he should possess that power.  Whether the executor shall possess this power depends upon the language of each will.  Its existence must clearly appear, as nothing will be taken by implication in this respect.''

The law is well expressed by the text-writers from whom we have made the above quotations, and when applied to the will in this case it is this: If there is nothing in this will to indicate that the testator, referring to the death of either of his children before he or she might receive his or he share, had in mind any other event than his own death, then the will is to be construed as meaning the death of a child before the death of the testator; but if on reading the whole will it appears that the testator did have in mind and was referring to another event, then the will must be construed as meaning death of the primary beneficiary before the occurrence of that other event.

Now let us turn to the will.  First it confirms to his wife the share of the testator's estate that she would take under the law if there were no will; next follows the residuary clause to his four children containing the words to be construed, to-wit: ''Should either of my children die without issue before he or she

shall have received his or her share of my estate, the share of such deceased child shall be equally divided among his surviving brothers and sisters,'' etc. If that were all there was in the will on that subject it should be construed to refer to the death of a child before the death of the testator, and the words "before he or she shall have received" should be construed to mean before he or she shall have been entitled to receive, which would be in the ordinary course of administration of the estate.

There being nothing in the residuary clause itself to signify actual receipt, the gift would not be subject to the hazard of accident or delay caused by the willful or negligent conduct of the executrix. But on the other hand, as the text-writers from whom we have quoted say, if the testator has seen fit to so embarrass the gifts to his children as to subject the same to such hazard the beneficiary must submit to it.

In this case the testator had in mind his children and their mother, and whatever hazard he imposed on his children's right to possession of the gift was confided to their mother. That is a fact to be borne in mind when we come to consider whether the testator intended to subject the rights of his children in any respect to the discretion of the executor. In a case where the executor is a stranger it might with greater force be said that it would be unreasonable to presume that a father intended to put the right of possession to the gifts to his children at the will or caprice of the executor than it would in a case where the discretion is confided to their own mother. There is much confidence expressed by the testator in his wife whom he makes sole executrix. Although she is given charge of the whole estate not only for purposes of ordinary administration, but also under directions to keep it together for an indefinite number of years and use the income as she might see fit, yet she is not to be required to give any bond, and in fact some of the rights con-

ferred on her would seem to constitute her a trustee extending beyond the termination of the ordinary duties of an executor. She was directed to maintain a home for the children during their minority, all of whom were minors at the time the will was written, the youngest about three years old, and for this purpose the income of the whole estate was put at her disposal. That purpose was prominent in the mind of the testator; it is stated not only in a forepart of the will but is repeated in the concluding clause, wherein she is directed to keep the property invested so as to derive an income "for the maintenance of a home and for the support of such children as are minors." She was authorized to sell any part of the property "whenever in her opinion it may seem expedient to do so." She was also authorized to hold the estate together and make only "such advances to my said children at such times and in such amounts as in her opinion will be for their best interests." And to sum it all up the testator said: "It is my desire that my said executrix shall have and exercise the same discretion as to the time and manner of the distribution of my estate that I would have if living." As to the son Clyde, whose widow the plaintiff is, there is a special devise of an eighty-acre tract of land to him, and a specific legacy of stock in the Walker-Lanyon Oil Company. This devise and legacy were not given to Clyde in the residuary clause of the will, and are therefore not subject to the limitation imposed by that clause; the only connection between them and the residuary clause is that their value was to be deducted from his share of the residuum when, in the opinion of his mother, the time was propitious for him to receive such share. As to that devise and legacy the will provided that they were to be given to him when he arrived at the age of 21, but it expressly provided that after that "he shall receive no further part or share until in the opinion of my executrix the same should be given to him."

Thus we see that when the testator said in the will "should either of my children die without issue before he or she shall have received his or her share of my estate," he had in mind not merely the possibility of one of them dying during his own lifetime, but also the period after his own death when it would be expedient in the opinion of his wife to give to the children or either of them his or her share. Therefore although he did not say *in totidem verbis* should either of my children die before he or she shall have been put in actual possession of his or her share, then the remainder over, yet, in the light of all that he said elsewhere in the will on the subject, that is what he meant. That being the testator's intention we are bound to give it effect, even if we should think it unjust or unreasonable, which we do not, because the testator was dealing with his own property and his own children and he had a right to dispose of the property as he pleased, and he pleased to keep it in the family, limiting the succession to his children and his grand-children.

We hold, therefore, that Clyde B. Lanyon had no interest that would descend to his widow or heirs at his death in that portion of his father's estate then remaining in the hands of the executrix.

II. Counsel for appellant contend that Clyde B. Lanyon, under the will of his father, was seized, during his marriage to appellant, of (at least) a base or determinable fee, and that such a fee, created by will, is an estate of inheritance, whereof the widow is entitled to dower. In their reply brief the counsel give us an interesting and learned argument on that point. That question, however, is not in this case. If it was a determinable fee it determined on the death of the appellant's husband, and the property does not belong to his estate, therefore it should not be included in the administratrix's inventory. If a husband during cov-

erture owns a fee simple title to land and sells the
same, the wife not joining or otherwise relinquishing
her dower, she is entitled to dower in the land at his
death, but the land is not his at his death and is not
listed in the inventory of the administrator. In such
case the widow seeks her rights against the purchaser
from her husband. And in such case all that she is
entitled to is dower; the statute which authorizes her,
when there is no child of the marriage, to elect one
half the estate in lieu of dower, has no application in
such case, because the property does not belong to the
husband's estate. If appellant is entitled to dower in
the land in question her right thereto is in no manner
affected by the judgment in this proceeding.

The judgment is affirmed. All concur.