T. C. KASPER, Collector of Internal Revenue for the United States of America for the District of South Dakota, Appellant,

v.

Kenneth C. KELLAR, Surviving Executor of the Last Will and Testament and Estate of Chambers Kellar, Deceased, and as Executor of the Estate of Floy B. Kellar, Deceased, Appellee.

No. 14974.

United States Court of Appeals Eighth Circuit.

Dec. 16, 1954.

Rehearing Denied Jan. 6, 1955.

of the gross estate of a decedent, for estate tax purposes, of "An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse."

Subparagraph (B) thereof, however, makes the deduction inapplicable in general to life estates or other terminable interests passing to the surviving spouse. But Subparagraph (D) in turn removes or excepts from the operation of Subparagraph (B), and so leaves subject to the deduction, any interest passing to and terminable upon the death of the surviving spouse as to which "such [surviving spouse's] death will cause a termination or failure of such interest only if it occurs within a period not exceeding six months after the decedent's death, * * and * * * such termination or failure does not in fact occur."

The Estate of Chambers Kellar, Deceased (a practicing attorney at Lead, South Dakota) had made a marital deduction, in the estate-tax return filed by the executors, of the value of the property devised and bequeathed by Kellar's will to his widow. The Commissioner refused to allow the deduction and assessed a deficiency tax in relation to such property, on the ground that the interest given to the widow by the will was one which would not become vested until distribution of the testator's estate; which was to go to other persons, if the widow was not living at the time that such distribution was made; and which, since the law of South Dakota did not compel distributions of decedents' estates to be made within six months after their death, was not within the qualification of Subparagraph (D), supra, as legally constituting an interest which could only be caused to terminate or fail by the widow's death occurring "within a period not exceeding six months after the decedent's death."

The Estate paid the assessed deficiency and then sued in the District Court for refund of it. Recovery was granted by the court, and the Government has appealed.[1]

L. W. Post, Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty. Gen., Clinton G. Richards, U. S. Atty., and Francis G. Dunn, Asst. U. S. Atty., Sioux Falls, S. D., with him on the brief), for appellant.

Kenneth C. Kellar, Lead, S. D. (R. E. Driscoll, Jr., Lead, S. D., with him on the brief), for appellee.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

Section 812(e) (1) (A) of the Internal Revenue Code, 26 U.S.C.A., in effect in 1950, the time here involved, provides for a "marital deduction", from the value

---

1. The suit was in technical form one against the Collector for the District of South Dakota.

The material portions of the will are as follows:

> "Item 2. I give and bequeath to my wife, Floy B. Kellar, if living at the time of the distribution of my estate, the sum of One Hundred Thousand Dollars ($100,000), * * *; if she be then dead this legacy to lapse and become a part of my residuary estate. * * *"

> "Item 5. If living at the time of the distribution of my estate, I give, devise and bequeath to my wife, Floy B. Kellar, one-third * * * of all the rest, residue and remainder of my property and estate * * *."

The widow's share of the residuary estate was devised and bequeathed to other named persons, "if * * * my wife * * * dies prior to the distribution of my estate * * *."

The evidence showed that administration of the estate had in fact been had, and distribution of its assets made, within six months after the decedent's death, and that the widow was living at the time. The court [2] appears to have taken the view that the occurring of these events and the removal of the contingencies thereby, within the period of six months after the decedent's death, were sufficient under the statute to establish the right to the marital deduction in the situation. It said: " * * * we are not concerned with what might have happened. The thing that concerns us is what did happen. Chambers Kellar bequeathed the property to his wife if she was alive when his estate was probated and distributed, and she was alive when his estate was probated and distributed, and that is all that is necessary, since it was within six months subsequent to his death."

■ But this construction and conclusion can not be held to be in harmony with the language of the statute. The statute is correctly read, we think, in Treasury Regulations 105, sec. 81.47b (d), when it says: "Where the only condition which will cause the interest taken by the surviving spouse to terminate is of such nature that it can occur only within 6 months following the decedent's death, the exception provided under section 812 (e) (1) (D), will apply, provided the condition does not in fact occur. However, where such condition * * * is one which may occur either within such 6-month period or thereafter, the exception provided under section 812(e) (1) (D) will not apply." See also Sen.Rep. No. 1013, Part 2, 80th Cong., 2d Sess., pp. 2, 7–8, 15–16.

■ The letter of the Commissioner to the Estate, rejecting the claim made for refund, still more directly stated the effect of the statute in the present situation, as follows: "The fact that distribution [here] actually took place within the six months' period is immaterial since subsection (D) applies only if on the date of the decedent's death it is certain that the surviving spouse's interests will become absolute if she survives such six-months' period. As of the date of the decedent's death there was no certainty that within the six-months' period the spouse's interests would become absolute inasmuch as it was possible that distribution might not have been made within six months of death."

■ There can be no question as to the right of Congress to make any contingency, legal or testamentary, to which the transmitting of a decedent's property is subject, the basis of a difference in estate-tax liability. Such a contingency, therefore, can as properly be made to consist of an existing legal possibility as of an existing fact condition. Whatever the selected contingency may be, it necessarily may be made admeasurable for tax purposes as of the time of the decedent's death. See Ithaca Trust Co. v. United States, 279 U.S. 151, 155, 49 S.Ct. 291, 73 L.Ed. 647. And when the contingency is so admeasurable and then exists, whether it has been made one of legal possibility or of fact certainty, it will not alter the situation that the contingency has there-

---

2. The case was tried to and decided by the late District Judge A. Lee Wyman.

after ceased to exist, even though this occurs before the estate tax itself is payable. Cf. First Trust Co. of St. Paul State Bank v. Reynolds, 8 Cir., 137 F.2d 518, 521.

The Estate has, however, also asked us to uphold the judgment here upon another ground—that under South Dakota law, on the circumstances involved, the expression used by the testator, "if living at the time of the distribution of my estate," is entitled to be read as meaning in the situation, "if living at the time of my death," and should be held to have had that local legal effect in relation to the passing of the decedent's property.

There are a number of cases in other states which appear to have reached a result of that nature, upon varying grounds, as a question of local wills-and-property law. Thus, in Cramer v. Browne, 159 Kan. 423, 155 P.2d 468, 470, where a mutual will provided that "if, at the time of the distribution of our property under this, our last will and testament, any of the persons named [as residuary legatees] * * * shall have died and have no children living, then such portion bequeathed to said persons, so deceased, shall be placed into the common fund and divided equally among the surviving persons named", it was held that the term "distribution" was meant to relate to the time of the testator's death and to be entitled to be given that legal effect. See also In re Wengerd's Estate, 143 Pa. 615, 22 A. 869, 13 L.R.A. 360; Johnes v. Beers, 57 Conn. 295, 18 A. 100; Johnson v. Coler, 187 Iowa 734, 174 N.W. 654; Callison v. Morris, 123 Iowa 297, 98 N.W. 780; In re Baxter's Estate, 58 Ariz. 16, 117 P.2d 91; Joseph v. Utitz, 34 N.J.Eq. 1; Rusch v. Melosh, 133 N.J.Eq. 502, 33 A.2d 390; Calkins v. Estate of Smith, 41 Mich. 409, 1 N.W. 1048.

On the other hand, there are a number of jurisdictions which have refused to accord anything except literal, technical meaning to such testamentary expressions as "at the time of the distribution of my estate," or "at the time of the

settlement of my estate," in their relationship to general estate administration. See In re Clarke's Estate, 103 Cal.App. 243, 284 P. 231; In re Hampe's Estate, 85 Cal.App.2d 557, 193 P.2d 133; Starr v. Willoughby, 218 Ill. 485, 75 N.E. 1029, 2 L.R.A.,N.S., 623; March v. March, 186 N.Y. 99, 78 N.E. 704, 8 L.R.A.,N.S., 180; In re Spencer, 16 R.I. 25, 12 A. 124; In re Jennrich's Estate, 197 Minn. 162, 266 N.W. 461, 267 N.W. 143.

The cases cited and relied upon by the Estate here rest, as we have indicated, upon varying theories and circumstances. One of the theories used, to reach such a result as is being urged upon us, has been that, in view of the numerous possible causes of delay that may be involved in the administration of an estate over which the beneficiaries have no control, a court will not impute to a testator the intent to condition a legacy upon its actual receipt, "unless the testator points out the time of distribution with some degree of certainty." In re Martin's Estate, 57 Montg.Co.Law R., Pa., 352.

But we need not undertake to analyze or discuss the theories or circumstances of these various decisions. There is nothing before us that would in any way enable us to do more than nakedly guess as to which of the two general lines of conflicting decision the State of South Dakota would probably follow. We will not ordinarily decide questions which have not been passed upon by the trial court, except where they are necessarily determinative of the result of the litigation as matters of controlling and established law. And on the question of resolving what local law is, which is unclear or unsettled, we have particularly emphasized, as our many decisions indicate, that we desire and will heavily rely upon the considered appraisal of a District Judge as to what the local law of his jurisdiction is.

This is as it should be, for factors of evaluation and judgment on unsettled questions will naturally be present at the local level, which are not available to us, such as unreported trial-court decisions,

percolating judicial trends, accepted legal climate, and familiarity with prevailing professional thought and temper.

 The question here attempted to be argued is therefore one which, in the vacuous situation presented by the record and briefs, should be allowed to be passed upon by the District Judge for a considered appraisal by him of what the South Dakota law probably is.

On the basis of what has been said, the judgment is reversed and the cause is remanded, for a determination, on the present record or otherwise, as the court may deem appropriate, of whether, under the wills-and-property law of South Dakota, the language used and the intention and the circumstances involved would be regarded as having had the legal effect of vesting and making undefeasible in the widow, as of the time of the testator's death, the property devised and bequeathed to her.[3]

Reversed and remanded for further proceedings.

COLLET, Circuit Judge, is of the opinion the judgment should be affirmed and therefore dissents.

Jack **KALPAKOFF**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 13938.

United States Court of Appeals Ninth Circuit.

Dec. 17, 1954.

Rehearing Denied Jan. 26, 1955.

---

3. Judge Wyman purported to make a finding in his memorandum opinion that the testator had changed his will, after the marital deduction provisions of section 812(e) (1) were enacted and came to his attention, and had redrawn the para-

J. B. Tietz, Los Angeles, Cal., Hayden C. Covington, Brooklyn, N. Y., for appellant.

Laughlin E. Waters, U. S. Atty., Mark P. Robinson, Manuel Real, Manley J. Bowler, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, BONE and POPE, Circuit Judges.

graphs here involved for the very purpose and with the specific intent of enabling his estate to obtain the benefit of the created marital deduction privilege. The memorandum opinion also further declared that, "When Chambers Kellar died, that portion of his estate which

was to go to his wife, the title to that property, vested simultaneously with his death." But the court did not assume to pass upon whether these elements and the language of the will did or did not give rise to an absolue interest in the widow under South Dakota law.