**Maude H. LAMAR, Personally and as Executrix of the Estate of Frederick C. Lamar, Deceased, Plaintiff,**

v.

**Edwin O. BOOKWALTER, District Director of Internal Revenue, Defendant,**

and

**United States of America, Intervenor.**

**No. 13113-3.**

United States District Court
W. D. Missouri, W. D.
Dec. 3, 1962.

Harry A. Morris and Thomas E. King, Kansas City, Mo., for plaintiff.

F. Russell Millin, U. S. Atty., by Calvin K. Hamilton, Asst. U. S. Atty., Kansas City, Mo., for defendant.

Harvey G. Schneider of the Tax Division, Department of Justice, Washington, D. C., for the United States.

DUNCAN, District Judge.

This action was instituted by the executrix to recover the sum of $70,456.89 plus interest, alleged to have been overpaid as Federal Estate Taxes by the estate of Frederick C. Lamar. The facts are not in dispute, and the question for determination by the court is one of law; whether or not the plaintiff, as deceased's widow, under the terms of his will was entitled to a marital deduction of 50%, or whether her interest was a terminable one under § 2056 Internal Revenue Code 1954, 26 U.S.C.A.1954 Ed. § 2056.

This controversy arises under § 361 Revenue Act of 1948; c. 168, 62 Stat. 110, which amended the Internal Revenue Code of 1939 to provide for a marital deduction. This section became § 812(e) of the Internal Revenue Code 1939, and is presently found in § 2056 Internal Revenue Code of 1954.

Prior to the enactment of this section, there was no provision in the tax laws allowing such marital deduction. The intent of Congress, as revealed in S.Rep. No.1013, 80th Cong. 2d Sess. U.S.Code, Cong.Serv.1948, Vol. II, page 1223 which accompanied the Bill, clearly points out that the basic purpose of the marital deduction was to equalize the tax situation between community and non-community property states. See Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Commissioner of Internal Revenue v. Ellis' Estate, 252 F.2d 109 (C.A. 3d).

The enactment of this statute was the culmination of more than ten years of discussion and consideration by the tax writing committee of the Congress. The question first arose in the middle '30s when the Treasury Department recommended that the tax benefits derived by husband and wife in the community property states be abolished, primarily for the purpose of obtaining additional revenue. This, of course, resulted in a great storm of protest from the twelve community property states, particularly Texas and California, where the wealthy taxpayers were enjoying preferential advantages as compared to the taxpayers of the rest of the country. A hearing was held before the Committee and the recommendation was not accepted or approved and written into the succeeding tax bill.

As Federal taxes continued to increase rapidly, the taxpayers in the non-community property states complained bitterly of inequality and demanded some relief for themselves. As a matter of fact, several states including Oklahoma and Michigan and others, enacted statutes to give their citizens relief. This was necessary because some of their wealthy citizens were moving into the community property states so that they might enjoy the tax benefits.

This controversy continued until finally it resulted in the enactment of the present bill which authorized joint tax returns between husband and wife, and provided for the marital deduction. However, in § 2056 Internal Revenue Code of 1954, the Congress has placed certain restrictions upon the transfer of property for the purpose of allowance of the marital deduction, including subsection (b) (1), which provides:

"Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—"

And (b) (3) which provides:

"For purposes of this section, an interest passing to the surviving spouse shall not be considered as an interest which will terminate or fail on the death of such spouse if—

"(A) such death will cause a termination or failure of such interest only if it occurs within a period not exceeding 6 months after the decedent's death, or only if it occurs as a result of a common disaster result-

ing in the death of the decedent and the surviving spouse, or only if it occurs in the case of either such event; and

"(B) such termination or failure does not in fact occur."

■ In view of the clear and unequivocal Congressional expression that the purpose of the statute was to equalize the burden of Federal taxation between community and non-community property states, certainly the statute should be construed so as to effectuate that purpose, if it can be consistently done.

Frederick C. Lamar died testate on January 1, 1958, a resident of Jackson County, Missouri. He was survived by his widow, the plaintiff, a son, a daughter-in-law and a number of grandchildren. His will was admitted to probate on January 8, 1958, and his widow was duly appointed executrix by the Probate Court of Jackson County, Missouri.

After making certain specific bequests to his heirs, he provided in Article X of his will:

"I give, devise and bequeath all of the rest, residue and remainder of my property and estate, of whatsoever character and description, real, personal or mixed, wheresoever situate and whether acquired before or after the execution of this WILL, to my wife, Maude H. Lamar, to have and to hold as her property *absolutely*. (Emphasis supplied.)

"In the event, however, that my wife, Maude H. Lamar, shall die prior to my death and shall not survive me or in the event she shall die simultaneously with myself or as the result of the same common accident or calamity to both of us, *or shall not survive the administration of my estate*, then and in that event, I give, devise and bequeath and dispose of said residue and remainder of my property to the following persons, and in the manner as follows: * * *." (Emphasis supplied.)

The testator then made provision for the disposition of the residue of his estate to his son, his daughter-in-law and his grandchildren going into considerable detail as to how the estate should be disposed of, and to whom, all of which is not important to a determination of the issues here.

The estate consisted entirely of personal property, the bulk of which was stocks, bonds, securities and some mortgages. According to the records of the Probate Court, there were no debts except some minor current accounts and expenses incident to his death and the cost of administration.

The decedent's widow did not predecease him, and survived the administration of his estate.

Subsequently there were some adjustments in the gross estate resulting from an audit, which reflected an increase in the value of certain stocks and securities. The marital deduction was also disallowed to the extent that it included the value of the assets within the residuary estate amounting to $223,907.31.

These adjustments led to an assessment of a tax deficiency against the estate of $70,456.89, which included principal and interest. The amount is not in controversy, and was paid by the executrix to the District Director on September 19, 1960, and on the same day a claim for refund was filed with the Commissioner, which was thereafter disallowed. In due time this action was instituted.

In disallowing the deduction the District Director contends that the provision of the will relative to the survival by the widow of the administration of the estate created a non-deductible terminable interest. Plaintiff contends that the interest created is absolute and indefeasible and vested immediately upon the death of the testator. Consequently it was not terminable as defined by the Revenue Code.

■ It is recognized by the parties that the question of whether or not the interest of the plaintiff was a terminable

one is to be determined by the law of Missouri. No Missouri cases have been cited and we have not been able to find any determining whether or not such interest as we are dealing with here vested at the time of testator's death or at the time of distribution. Nor has a like question of Missouri law been before the Federal courts.

However, the question has been considered by United States District Courts in other states where the language in the will was almost exactly like that in Lamar's will. Because the decisions in those cases were based upon state law, there is no unanimity of opinion.

In Robertson v. United States, 199 F.Supp. 78 (N.D.Ala.1961), the District Court held that language in a will similar to that in the present case, under Alabama law, created a terminable interest and was not deductible.

In California in several cases it has been held that such language creates a terminable interest. See Farrell v. United States, 198 F.Supp. 461 (S.D. Cal.1961).

In Montana in Steele v. United States, 146 F.Supp. 316 (D.Mont.1956) the United States District Court held that a determination by a state court of language in a will comparable to that in Lamar's will, created an interest which vested at the time of decedent's death, was binding upon it and held that the wife was entitled to her marital deduction.

A similar situation appeared in Oklahoma in Mappes et al. v. United States, 208 F.Supp. 42 (D.C.) it was held that a determination by the state probate court where testator provided in his will that:

> "I give, devise and bequeath to my wife, Lottie Mappes, if living at the time of my death, all of the remainder of my property, real, personal and mixed, wherever it may be situated."

In paragraph 3 he further provided that:

> "In the event my wife should predecease me, or should die before my estate has been administered, then in that event I give, devise and bequeath to my sons, * * *."

created a fee simple title in the wife at the time of her husband's death, was binding upon the Federal court and that the widow was entitled to a marital deduction. In arriving at its conclusion, the court relied upon Brodrick v. Gore, 224 F.2d 892 (C.A.10th, 1955).

None of the above cases are of much help to us here because in each case there had been a prior determination by the state court of the time of vesting and nature of the interest, and the Federal court held it was bound by that determination. A case which more closely parallels our case is Smith v. United States, 158 F.Supp. 344 (D.Colo.1957) where the will stated:

> "I devise and bequeath to my wife, Hellen L. Smith, all the rest, residue and remainder of my estate of whatsoever character and wheresoever located, including all lapsed legacies and devises, to be her absolute property.
>
> "In the event that my said wife should predecease me or, surviving me, die before distribution to her of the bequest herein provided for her, then and in that event I direct that the bequest to her shall lapse and become a part of the rest, and residue of my estate * * *."

The question for determination was the same as here, plaintiff contending that her interest vested absolutely and the Government contending that it was a "terminable interest" and not deductible. In arriving at its conclusion, the court accepted the contention of plaintiffs that:

> "The provisions of the second paragraph, (of the will) and particularly the language last above quoted, are so indefinite, uncertain, and ambiguous as to meaning, and in such hopeless conflict with the first paragraph of Article VIII of the will

as well, as Article VII thereof, as to render said second paragraph void and of no effect",

and held that the widow's interest qualified for the deduction. The court did not discuss the statutory law of wills and probate of Colorado.

So far as Federal decisions are concerned, we come to the only decided case on the exact question in our own Eighth Circuit, Kasper v. Kellar, 217 F.2d 744 (C.A.8th 1954), decision on remand 138 F.Supp. 738 (W.D.S.D.1956). The subject of the controversy in this case was the language in Kellar's will:

"I give and bequeath to my wife, Floy B. Kellar, if living at the time of the distribution of my estate, the sum of One Hundred Thousand Dollars ($100,000) in money or at her option in securities to be selected by her, at their market value; if she then be dead this legacy to lapse and become a part of my residuary estate. It is my will and I do so direct that this legacy shall be paid in full prior to the payment of any other legacy, bequest or devise."

The question of whether, under this language, the interest of the widow was a terminable one and not subject to deduction, was before the late Judge A. Lee Wyman, who upheld the contention of the executors that the actual intention of the testator as expressed in the will was sufficient to bring the case within the exception stated in § 812(e) (1) of the Internal Revenue Code of 1939.

The widow survived the decedent and the administration of the estate which was closed and distribution of the assets made by the executor within six months following decedent's death. The widow claimed her marital deduction and paid the tax upon the remainder, and upon disallowance by the Commissioner, the amount demanded was paid and suit brought for refund.

In an unpublished opinion, Judge Wyman held that the widow, having survived the six months period following her husband's death, was entitled to the marital deduction under § 812(e) (1) (d). Judge Wyman stated:

"We are not concerned with what might have happened. Chambers Kellar bequeathed his property to his wife if she was alive when his estate was probated and distributed, and she was alive when his estate was probated and distributed, and that is all that is necessary, since it was within *six months subsequent to his death*." (Emphasis supplied.)

On appeal the Court of Appeals reversed and remanded—

" \* \* \* for a determination, on the present record or otherwise, as the court may deem appropriate, of whether, under the wills-and-property law of South Dakota, the language used and the intention and the circumstances involved would be regarded as having had the legal effect of vesting and making indefeasible in the widow, as of the time of the testator's death the property devised and bequeathed to her."

In the appellate court the estate asked the court to hold that in addition to the contention sustained by Judge Wyman, that it also hold under South Dakota law that the words used in the will by the testator, "if living at the time of the distribution of my estate" mean "if living at the time of my death". Concerning that request, the court cited the cases for and against the theory, where it said:

"There is nothing before us that would in any way enable us to do more than nakedly guess as to which of the two general lines of conflicting decisions the State of South Dakota would probably follow. We will not ordinarily decide questions which have not been passed upon by the trial court, except where they are necessarily determinative of the result of the litigation as matters of controlling and established law. And on the question of resolving what local law is, which is unclear or unsettled, we have particularly

emphasized, as our many decisions indicate, that we desire and will heavily rely upon the considered appraisal of a District Judge as to what the local law of his jurisdiction is.

"This is as it should be, for factors of evaluation and judgment on unsettled questions will naturally be present at the local level, which are not available to us, such as unreported trial-court decisions, percolating judicial trends, accepted legal climate, and familiarity with prevailing professional thought and temper."

On remanding the case for hearing before Judge Mickelson upon the original record and the testimony of five outstanding South Dakota lawyers, the question was whether or not, under South Dakota law, the language used in the will created an indefeasible interest in the widow as of the time of decedent's death. This evidence was heard pursuant to stipulation of the parties. Four of the witnesses testifying for plaintiff "believed unequivocally"—"That the title to the property devised and bequeathed to Mrs. Kellar vested as of the date of testator's death and vested indefeasibly". The witness called for the defendant believed "That a vested title did vest in Mrs. Kellar at the time of testator's death, but that it was not an indefeasible title".

Chief Judge Mickelson concluded that the rule in South Dakota, (like that provided by statute in Missouri, § 473.260 set out infra) is:

"The rule in South Dakota is that title to property, both real and personal, passes immediately to the heirs and beneficiaries upon the death of the intestate or testator, subject only to the control of the County Court for the purpose of administration, and a decree of distribution vests or grants no title, but merely releases the property from probate and confirms the title already passed to the heirs or beneficiaries."

Judge Mickelson believed that there was uncertainty and indefiniteness in the provisions of the will and said:

"I can reach no other conclusion but that the wording of Mr. Kellar's will is ambiguous, and that, while a court in construing such a will must try to determine the intention of the testator from the face of the will itself, looking to the four corners thereof, this will must be construed and the ambiguities determined by not only looking to the face of the will to determine the intention of the testator, but also by looking to the circumstances involved."

After a very careful and conscientious review of all the evidence and of the statutory and case law of South Dakota, and many authorities on both sides of the question, the court came to the conclusion that:

"It is my opinion that under the wills-and-property law of South Dakota, the language used by Chambers Kellar in his will, and the intention and the circumstances involved, would be regarded as having had the legal effect of vesting and making undefeasible in the widow, as of the time of the testator's death, *the property devised and bequeathed to her.*" (Emphasis supplied.)

Having briefly reviewed how the courts of other jurisdictions have viewed the question, we come now to the question of how the Missouri courts construe the language in Lamar's will. No Missouri case has been cited which squarely meets the problem with which we are confronted. Most of the cases arise where the questions for determination are the rights of the residuary legatees, devisees or heirs of the decedent where the spouse predeceased the testator.

"The law favors vested estates, and the rule is that estates shall be held to vest at the earliest possible period, unless contrary intention is clearly manifested in the grant."

Trautz v. Lemp, 329 Mo. 580, 46 S.W.2d 135, 142 (1932).

This case clearly expresses the view of the Missouri courts on the question of early vesting. While the issue involved the question of when title vested in a trustee under a will, the principle is comparable. In that case the will provided:

"All the rest, residue and remainder of my estate, of whatsoever kind and wherever situated, real, personal or mixed, I devise and bequeath unto my son Eugene W. Handlan, and my son Alexander H. Handlan, Jr., and my son E. R. Handlan, in trust, however, upon the following uses, trusts and conditions, that is to say: (a) This trust is to commence immediately upon the termination of the administration of my estate, which must be accomplished within the statutory period, unless for good and sufficient reasons determined by the Probate Court having jurisdiction over the administration of said estate, it becomes impossible or impracticable to close the administration within such statutory period. This trust is to continue for a period of twenty (20) years from its beginning, * * *."

Continuing the Court said:

"Contention is made that under the terms of the trust there was a period of lapse between the time of testator's death and the vesting of the legal title in the trustees, the necessary effect of which was to transgress the rule against perpetuities."

In passing upon the question, the court stated:

"The words *devise* and *bequeath*, used by the testator in leaving the residue of his property to his three sons in trust, are not words of futurity, but on the contrary they import a present vesting of the legal title in the trustees immediately upon the death of the testator. There is no language in the will evincing a contrary intent unless it be the provision that the trust is to commence immediately upon the *termination of the administration of the estate in the probate court.*

"The contention is that the legal title cannot vest in the trustees until the trust commences, and, as the will provides that the trust shall commence when the administration ends, necessarily the legal title will vest in the trustees at that time. This contention cannot be upheld for two reasons: (1) It is opposed to the rules of law governing the creation of trusts; and (2) it is contrary to the intention of the testator as expressed in his will." (Emphasis supplied.)

Not only is this the general rule, but likewise the statutory law, § 473.260, V.A.M.S. The above section was § 84 of the Model Probate Code of Missouri, enacted in 1955 and provided:

"When a person dies, his real and personal property, except exempt property, passes to the persons to whom it is devised by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as his heirs; but it is subject to the possession of the executor or administrator and to the election of the surviving spouse and is chargeable with the expense of administering the estate, the payment of other claims and allowances to the family, except as otherwise provided in this law."

It will be observed that the case law and the statutory law of Missouri conform almost identically to the law of South Dakota cited by Judge Mickelson in Kasper v. Kellar, supra. It is also the rule in Missouri that the:

"unconditional devise of the fee * * * can be cut down only by an express declaration to that effect or by the use of language necessarily implying such a purpose from words equally as clear as those creating the fee." Schake v. Siem, 265 S.W.2d

338, 341 (Mo.1954); Thompson v. Smith, 300 S.W.2d 404 (Mo.1957).

■ The tax is on the act of the testator and is admeasured as it stood on the day when the testator died. First Trust Co. of St. Paul v. Reynolds, 137 F. 2d 518, 521, (C.A.8th, 1943); Shedd's Estate v. Commissioner of Internal Revenue, 237 F.2d 345 (C.A.9th, 1956).

■■ The true intent and meaning of a testator must be determined from the entire instrument, and must be enforced unless it conflicts with public policy or positive law. Schake v. Siem, supra. What was the testator's intent so far as his wife was concerned? Certainly it was that she was to have the remainder of his estate with no restriction so far as she was concerned. Paragraph 1, Article X of the will which provides:

> "I give, devise and bequeath all of the rest, residue and remainder of my property and estate, of whatsoever character and description, real, personal or mixed, wheresoever situate and whether acquired before or after the execution of this WILL, to my wife, Maude H. Lamar, to have and to hold as her property *absolutely*." (Emphasis supplied.)

vests the property in the wife absolutely. She is not required to do anything, nor is she prohibited from doing any act that could defeat her right to the bequest. There was no limitation upon her right to receive and enjoy the bequest. Under the will it certainly was his intention that upon his death it should be hers, and under the statute, § 473.260 supra, which became a part of the will, the bequest vested upon his death. There was no expressed intent to limit her right to it or to dispose of it. No earthly power could defeat her "absolute" right to the bequest. Only an act of God, death, could defeat it.

The second paragraph:

> "In the event, however, that my wife, Maude H. Lamar, shall die prior to my death and shall not survive me or in the event she shall die simultaneously with myself or as the result of the same common accident or calamity to both of us, or *shall not survive the administration of my estate,* then and in that event, I give, devise and bequeath and dispose of said residue and remainder of my property to the following persons and in the manner as follows: * * *" (Emphasis supplied.)

does not seek, nor can it be construed, it seems to me, to limit or defeat her rights, but it is a limitation upon the rights of his heirs to ever inherit or take by bequest what he left at the time of his death. If that construction cannot be placed upon it, then paragraph 2 is inconsistent with paragraph 1 which makes the bequest "absolute".

As heretofore stated, there was no real estate and no debts of consequence, and under § 473.613 V.A.M.S. there being an adequate amount of money to pay the costs of administration and the debts (there was here more than $600,000), the executrix could, at any semi-annual settlement, have made a partial distribution to the beneficiaries.

Because of its comparative newness, I have not been able to find any case in Missouri construing the provisions of § 473.260 providing for the vesting of property upon the death of a testator. Surely when Congress enacted legislation to equalize the tax burden between community and non-community property states, it did not anticipate that it would be so narrowly construed as to defeat its purpose.

Considering the language of the will, the apparent conflict between paragraphs 1 and 2 of Article X, the rule of early vesting, the intent of the testator, and the general and statutory laws of Missouri, it is my conclusion that the bequest vested in the widow at the time of testator's death and that the estate is entitled to the marital allowance.