UNITED STATES of America, Appellant,

v.

Lottie A. MAPPES, individually, and Ernest E. Mappes, Executor of the Estate of William G. Mappes, deceased, Appellees.

No. 7232.

United States Court of Appeals Tenth Circuit.

June 3, 1963.

---

"(a)  *  *  *.

Benjamin M. Parker, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attorneys for Department of Justice, Washington, D. C., and B. Andrew Potter, U. S. Atty., on brief), for appellant.

Tom W. Garrett, of Garrett & Garrett, Oklahoma City, Okl., for appellees.

Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.

MURRAH, Chief Judge.

This is an appeal from a judgment entered on stipulated facts, awarding appellee-taxpayer a refund of federal estate taxes, based upon the "marital deduction" provided in 26 U.S.C. § 2056. This section of the Internal Revenue Code provides for a deduction from the gross estate of an amount " * * * equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, *. *" but also significantly provides that no such deduction is allowable with respect to the passing of a "terminable interest," if another interest in the same property passes from the decedent, without consideration, to some other person who may possess or enjoy the property after termination or failure of the interest passing to the spouse. See: Treasury Regulation § 20.2056(b)–1(b) and (c) (1) (i) and (ii), interpreting 26 U.S.C. § 2056(a) and (b) (1) of the 1954

**510**

Code;[1] and In re Reilly's Estate, 3 Cir., 239 F.2d 797.

William G. Mappes, husband of the appellee-taxpayer, died testate, leaving a wife and two sons. The decedent's will was duly admitted to probate in the County Court of Oklahoma County, Oklahoma, and provided in presently material part: "I give, devise and bequeath to my wife, Lottie Mappes, if living at the time of my death, all of the remainder of my property, real, personal and mixed, wherever it may be situated." In the next paragraph, however, the will further provided: "In the event that my wife should predecease me, or should die before my estate has been administered, then in that event I give, devise and bequeath to my sons, * * * all the remainder of my property, * * *." On March 29, 1960, the County Court entered its final decree and order of distribution in the estate of William G. Mappes, and ordered, " * * * that under the terms of his will, all of the above described property, as well as any other property owned by William G. Mappes at the time of his death, should be distributed to his wife, Lottie Mappes."

The Executor of the estate filed a Federal Estate Tax Return, in which he deducted 50 per cent of the value of the property so distributed, as the statutory "marital deduction," from the gross estate. The deduction was disallowed by the government, on the ground that the interest in the property which passed to the wife at the instant of the decedent's death was a non-deductible, terminable interest, within the meaning of 26 U.S.C. § 2056(b) (1) of the Internal Revenue Code. The resulting additional assessment of estate tax was paid by the appellee-taxpayer; the claim for refund was duly rejected; and, this suit followed.

The trial Court's allowance of the deduction is based upon the conclusive effect accorded the Oklahoma Probate Court's decree, which gave the widow a fee simple interest in the property. The Court accordingly held that the interest which passed by the will was not a terminable interest, within the meaning of the applicable federal statute. See: Mappes v. United States, D.C., 208 F. Supp. 42.

■ For the purpose of determining whether the interest which passed to the spouse was a terminable interest, within the meaning of the federal statute, we must first determine the nature and extent of the interest which passed at the instant of the testator's death, not the interest given by the decree of the Probate Court. "Brief as is the instant of death, the court must pinpoint its valuation at this instant—the moment when the ownership of the decedent ends and the ownership of the successors begins." Wisdom, in United States v. Land, 5 Cir., 303 F.2d 170, 172. And see: Shedd's Estate v. Commissioner, 9 Cir., 237 F.2d 345; Ballantine v. Tomlinson, 5 Cir., 293 F.2d 311; Cunha's Estate v. Commissioner, 9 Cir., 279 F.2d 292; and Starrett v. Commissioner, 1 Cir., 223 F.2d 163. And see also: U.S.

---

1. 26 U.S.C. § 2056(a) provides: "For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate."

26 U.S.C. § 2056(b) (1) provides: "Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; * * *."

Code Congressional Service, 80th Congress, 2nd Session, p. 1228, 1232 for the legislative history of 26 U.S.C. § 2056.

■ We think reliance on the conclusive effect of the decree of the Probate Court is untenable, for the Probate decree did not purport to construe the will to determine the nature and extent of the property interest which passed at the instant of the testator's death—the crucial time here. It was in no way passing upon the nature of the interest that Mrs. Mappes took at the instant of Mr. Mappes' death. The vital question then must be resolved by resort to Oklahoma law, to determine whether the interest which passed at the instant of the testator's death would terminate or fail on the lapse of time or the occurrence of some contingency, thus allowing another interest in the same property to pass from the decedent to some other person, without consideration, who may possess or enjoy the property, after the termination or failure of the spouse's interest. See: Shedd's Estate v. Commissioner, supra. Indeed, the trial Court recognized the sole question as "whether or not, under local [Oklahoma] law, the interest which passed to Lottie Mappes was a contingent interest, or a vested interest subject to complete defeasance and thus terminable * * * or whether the interest * * * [indefeasibly] vested at the decedent's death * * *." Mappes v. United States, supra, 208 F.Supp. p. 43.

The devising paragraph of the will clearly and distinctly devised the subject property interest to the surviving spouse. The succeeding paragraph undoubtedly purported to condition that grant on two contingencies: (1) that she would survive the testator; and (2) that she should not die before the estate "has been administered." The words of the second paragraph are undoubtedly intended to impose a limitation over to the sons, thus effecting a conditional disposition, as one depending upon the occurrence of some uncertain event, "by which it is either to take effect or be defeated." 84 O.S. § 179. The narrow and decisive question is whether, under applicable Oklahoma law, the words, "before my estate has been administered," are equally "clear and distinct" when considered as words of limitation or condition on the original devise. 84 O.S. § 156. See: Ferguson v. Patterson, 10 Cir., 191 F.2d 584, and Oklahoma cases cited therein; and Dannenburg v. Dannenburg, Okl., 271 P.2d 345.

We have found no case from Oklahoma, or any other jurisdiction, construing the precise language of our instrument. The legal effect of words of similar import have been the subject of much discussion, with a divergence of opinion concerning their sufficiency to condition an otherwise indefeasible devise. See: Lamar v. Bookwalter, D.C., 213 F.Supp. 860. The case which seems most influential is Kasper v. Kellar, 8 Cir., 217 F.2d 744, a South Dakota case, involving the South Dakota statutes, from which the Oklahoma statutory law of wills and succession originated. In that case, the critical paragraph of the will bequeathed to the spouse, "if living at the time of the distribution of my estate, the sum of * *." The question arose as to whether the quoted words operated to devise a terminable interest for federal estate tax purposes. The trial Court was not concerned with "what might have happened," but with "what did happen," and since the spouse was alive when the estate was probated and distributed, concluded "that is all that is necessary, since it was within six months subsequent to his death." [2] On appeal, the Eighth Circuit recognized the fallacy of this premise and took the position, as we do here, that "[w]hatever the selected contingency may be," it is necessarily determinable for tax purposes, as of the time of the decedent's death. The Court then stated the question as whether "under the wills-and-property law of South Dakota, the lan-

---

2. An interest which will terminate or fail within six (6) months is a deductible terminable interest. See: 26 U.S.C. § 2056 (b) (3).

guage used and the intention and circumstances involved would be regarded as having had the legal effect of vesting and making undefeasible in the widow, as of the time of the testator's death, the property devised and bequeathed to her." And, more specifically, whether "the term 'distribution' was meant to relate to the time of the testator's death and to be entitled to be given that legal effect." Kasper v. Kellar, supra, 217 F.2d p. 747. And, finding no cases on the precise point, the case was remanded to the trial Court for the determination of that critical question of local law from an appraisal by the District Judge of "factors of evaluation and judgment * * * such as unreported trial-court decisions, percolated judicial trends, accepted legal climate, and familiarity with prevailing professional thought and temper." Kasper v. Kellar, supra, 217 F.2d p. 747. On remand, the trial Court took expert testimony concerning the interpretation of applicable South Dakota statutes and decisional law, from which he concluded that South Dakota favored the early vesting of an estate and "where title has once vested, courts are generally reluctant to hold that there has been a divestment, unless the condition for such divestment is plain and specific, and the event causing such divestment can be determined with reasonable certainty." Coming then to the final question whether the interest which undoubtedly vested at the instant of the testator's death was subject to divestment by the use of the words, "if living at the time of the distribution of my estate," the Court held that the words were not sufficiently clear and distinct in point of event or time, to effect a divestment. He observed that the word "distribution" could mean: (1) "the time * * * the legacy * * * was actually paid"; or (2) "it could mean and refer to the actual entry of a decree of 'distribution';" or (3) "it could mean the actual entry of a final decree of 'distribution', which would be when the estate has been completely administered and was ready to be closed." He, there-

fore, construed the will as vesting an indefeasible interest in the spouse at the time of the testator's death.

In Lamar v. Bookwalter, supra, the Missouri federal District Court faced the same problem under a Missouri will, wherein the testator devised and bequeathed his property to his spouse "absolutely," but also provided that "in the event" the spouse should "not survive the administration of my estate, * * * I give, devise and bequeath * * * of said residue and remainder of my property to the following persons * * *." After reviewing the case law, including Kasper v. Kellar, supra, and this case in the District Court, the Missouri trial Court construed the critical words as not intending to limit or defeat the rights of the spouse, but as a "limitation upon the rights of his heirs to ever inherit or take by bequest what he left at the time of his death." And, "if that construction cannot be placed upon it, then paragraph 2 is inconsistent with paragraph 1, which makes the bequest absolute."

■ Equating the words, "at the time of distribution" in the South Dakota case, to our words, "before my estate has been administered," we readily discern a valid and decisive difference in the uncertainty of the time and event of "distribution" and what to us is the certainty and finality of the words, "before my estate has been administered." These words clearly denote the conclusion of the judicial process of administration, i. e., the entry of the final decree, at which time the interest becomes indefeasibly vested in the spouse. Until that time, the interest is terminable upon the death of the spouse.

■ As we understand the Missouri Court's reasoning in Lamar v. Bookwalter, supra, it is to the effect that the critical language ("shall not survive the administration of my estate") is not a limitation upon the otherwise absolute right of the spouse to take under the will, but is rather a limitation upon the rights of the heirs to inherit or take under the will, in the event the spouse

predeceased the testator. In any event, we are certain that the critical language of our will purports to limit or condition the right of the spouse to take the property, even though it may also impose a limitation upon the rights of the sons to inherit. This language is, to be sure, inconsistent with the absolute devisement, but it is not irreconcilably so. When the two pertinent provisions of the will are construed together as "one consistent whole," (i. e., see: 84 O.S. § 155) to effectuate the intent of the testator, we are certain that the words, intended as a limitation, are sufficiently "clear and distinct" (i. e., see: 84 O.S. § 156) to effect a "conditional disposition" (i. e., see: 84 O.S. § 179) of the property, under Oklahoma law, thus creating a terminable interest, within the meaning of the federal statute.

The judgment is reversed.