Edwin O. BOOKWALTER, District Director of Internal Revenue, Appellant,

v.

Maude H. LAMAR, Personally and as Executrix of the Estate of Frederick C. Lamar, Deceased, Appellee.

No. 17337.

United States Court of Appeals Eighth Circuit.

Oct. 28, 1963.

Rehearing Denied Dec. 9, 1963.

* Of the Second Circuit, sitting by designation.

Harry Marselli, Atty. Dept. of Justice, Tax Division, Washington, D. C., made argument for the appellant and Louis F.

Oberdorfer, Asst. Atty. Gen. Tax Div., Washington, D. C.; Lee A. Jackson, Robert N. Anderson, and Benjamin M. Parker, Attys. Dept. of Justice, Tax Division, Washington, D. C., and also F. Russell Millin, U. S. Atty., Kansas City, Mo., were with him on the brief.

James J. Waters, Kansas City, Mo., made argument for the appellee and Harry A. Morris, of Waters & Morris, Kansas City, Mo.

Before MATTHES and MEHAFFY, Circuit Judges, and MICKELSON, District Judge.

MATTHES, Circuit Judge.

The basic issue in this case is whether Maude H. Lamar (appellee), widow of Frederick C. Lamar, deceased, is entitled to the "marital deduction" of 50% of the value of the adjusted gross estate of Mr. Lamar under the provisions of § 2056 of the Internal Revenue Code of 1954. More precisely, was the interest in the estate devised to the widow by decedent in his last will and testament a terminable one within the meaning of the statute, so as to disqualify her from claiming the "marital deduction,"—as contended by the Director, or, did the devised property vest absolutely in the widow immediately upon Lamar's death, free of any contingency—as urged by appellee and as found by the trial court? Lamar v. Bookwalter, W.D.Mo., 213 F.Supp. 860 (1962).

Section 2056 of the Internal Revenue Code of 1954, the statutory authority for the "marital deduction," also provides for a limitation in the case of a life estate or other terminable interest. Pertinent hereto is that portion of the limitation which reads:

"(b) Limitation in the case of life estate or other terminable interest.—

"(1) General rule.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this

section with respect to such interest—

"(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

"(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;"

The facts were agreed upon and in summary are as follows:

Lamar, the testator, a resident of Kansas City, Missouri, died on January 1, 1958, survived by his widow, a son, a daughter-in-law, and a number of grandchildren. His will, executed on April 13, 1954, provided for a number of specific bequests not here in issue. The controversy is focused upon and revolves around Article Ten of the will, particularly the first two paragraphs of Article Ten, which read:

"I give, devise and bequeath all of the rest, residue and remainder of my property and estate, of whatsoever character and description, real, personal or mixed, wheresoever situate and whether acquired before or after the execution of this WILL, to my wife, Maude H. Lamar, to have and to hold as her property absolutely.

"In the event, however, that my wife, Maude H. Lamar, shall die prior to my death and shall not survive me or in the event she shall die simultaneously with myself or as the result of the same common accident or calamity to both of us, *or shall not survive the administration of my estate,* then and in that event, I give, devise and bequeath and dispose of said residue and remainder of my property to the following persons and in the manner as follows:" (Emphasis supplied).

In the nine succeeding paragraphs of Article Ten, the testator, in explicit language, provided for disposition of "the rest, residue and remainder" of his property in the event of the occurrence of any of the enumerated contingencies. Since Mrs. Lamar survived her husband and the administration of his estate, the "gift-over" provisions of the will did not become operative.

The will was admitted to probate in the Jackson County, Missouri Probate Court on January 8, 1958, the estate was duly administered, and the finding and order discharging the designated executrix—Maude H. Lamar—was entered by the probate court on April 1, 1959. As executrix, Maude H. Lamar executed and filed the federal estate tax return on November 26, 1958, and simultaneously with such filing paid the tax liability shown thereon to be due in the amount of $59,462.43. After audit of the return, the Government disallowed the claimed "marital deduction" in the amount of $223,907.31, and on September 9, 1960, levied a $70,456.89 deficiency assessment against appellee in her capacity as executrix. Appellee paid the assessment on September 19, 1960, and her claim for refund forms the basis for this action.

It is manifest from the trial court's opinion that the first paragraph of Article Ten of the will greatly influenced the court in its ultimate conclusion. Looking to that paragraph, the court stated:

"She [the widow] is not required to do anything, nor is she prohibited from doing any act that could defeat her right to the bequest. There was no limitation upon her right to receive and enjoy the bequest. Under the will it certainly was his intention that upon his death it should be hers, and under the statute, § 473.260 supra, which became a part of the will, the bequest vested upon his death. There was no expressed intent to limit her right to it or to dispose of it. No earthly power could defeat her 'absolute' right to

the bequest. Only an act of God, death, could defeat it." 213 F.Supp. at 867.

While the court did not find any ambiguity in the phrase "or shall not survive the administration of my estate" appearing in the second paragraph of Article Ten, the court held in effect that the phrase was meaningless, reasoning that it did not

"limit or defeat her rights, but it is a limitation upon the rights of his heirs to ever inherit or take by bequest what he left at the time of his death. If that construction cannot be placed upon it, then paragraph 2 is inconsistent with paragraph 1 which makes the bequest 'absolute'." 213 F.Supp. at 867.

Opposed to the court's interpretation of the crucial clauses of the will, the Director, in summary, contends that the devise to the widow in the first paragraph of Article Ten was expressly conditioned upon the occurrence of an event or contingency, or on the failure of an event or contingency to occur, together with a limitation and "gift-over" of the same property to testator's son, daughter-in-law and grandchildren; that upon the death of testator it was not certain or definite that the widow would survive the administration of the estate; that therefore her interest in the property was a defeasible or terminable one within the meaning of § 2056(b) (1); and thus that the "marital deduction" was not allowable.

Appellee expressly concedes that "(f)or Federal estate purposes an interest passing to a surviving spouse to qualify for the marital deduction, must be absolute and indefeasible"; that "(s)uch a determination, under state law, must be made as of the moment of the testator's death." She makes no claim of ambiguity in the second paragraph of the will, but takes the unequivocal and unyielding position that, inasmuch as paragraph 1 of Article Ten conveyed the residue of Lamar's estate to the widow *absolutely*, paragraph 2 and particularly the clause "or shall not survive the administration of my estate"

not only did not render the prior grant defeasible and her interest in the property terminable, but that such clause was utterly meaningless. In appellee's language, "It is comparable to the tail of a dog. It's there but it does not change the substance of the animal, and may be removed without trouble, since it serves no purpose other than appearance. The questioned clause is null and void and of no effect."

Clearly, the crux of this controversy centers upon the nature, extent and character of the interest under Missouri law which passed to decedent's widow under his will at the precise moment of his death. See United States v. Quivey, 8 Cir., 292 F.2d 252, 255 (1961); United States v. Mappes, 10 Cir., 318 F.2d 508, 510–511 (1963); Cunha's Estate v. C. I. R., 9 Cir., 279 F.2d 292, 297 (1960), cert. denied, 364 U.S. 942, 81 S.Ct. 460, 5 L.Ed. 2d 373 (1961). If such interest was defeasible, then under § 2056(b) (1) of the 1954 Internal Revenue Code, the interest was "terminable," and the widow was not entitled to a "marital deduction." In construing the will—the key issue to be resolved, we are admonished to follow the applicable Missouri statutes as interpreted by the Supreme Court of Missouri, and as embodied in the jurisprudence of that state. See Kasper v. Kellar, 8 Cir., 217 F.2d 744 (1954); Yocum v. Parker, 8 Cir., 134 F. 205, 211 (1904).

According to the statutory law of Missouri, "[a]ll courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them." V.A.M.S. § 474.430. Such true intent is the keystone of construction in ascertaining the meaning of any will, and must be gleaned from examination of the *entire* instrument, viewing it from its four corners. When the real intent of the testator is determined, the proper construction of the will is accomplished. E. g. Shaw v. Wertz, Mo., 369 S.W.2d 215, 217 (1963); Thompson v. Smith, Mo., 300 S.W.2d 404, 406 (1957); Housman v. Lewellen, 362 Mo. 759, 244

S.W.2d 21, 23 (1951); Vaughan v. Compton, 361 Mo. 467, 235 S.W.2d 328, 330 (1950); Blumer v. Gillespie, 338 Mo. 1113, 93 S.W.2d 939, 940 (1936); Cox v. Jones, 229 Mo. 53, 129 S.W. 495, 497–498 (1910). All technical rules of construction are subservient to the paramount rule that the intention of the testator shall control unless it contravenes some established rule of law. Commerce Trust Company v. Weed, Mo., 318 S.W.2d 289, 294 (1958). Considering the Missouri law pertinent to will construction in Brittain v. First Trust & Savings Bank, 8 Cir., 42 F.2d 613 (1930), cert. denied sub nom. Motter v. Brittain, 282 U.S. 896, 51 S.Ct. 181, 75 L.Ed. 790 (1931), we observed:

> "The cardinal rule in the construction of wills is to ascertain the intent of the testator. This intent is to be determined from the whole will and from a consideration of all of its provisions; and it is to be presumed that every word is intended by the testator to have some meaning; and no clause is to be rejected to which a reasonable effect can be given; and where two constructions are possible, one disregarding the word or clause, and the other giving it effect, the latter should be adopted." 42 F.2d at 615.

See also, Burnes v. Burnes, 8 Cir., 137 F. 781, 792, (1905), cert. denied, 199 U.S. 605, 26 S.Ct. 746, 50 L.Ed. 330 (1905).

Other principles of will construction—all of which are more or less hornbook law, are cited and discussed by both parties. It would indeed be excess exposition to repeat such commonplaces of the law about which there can be little or no question. Here, we shall mention only those principles which we deem particularly relevant.

On the one hand, appellee strongly relies upon the rule that the law favors the early vesting of testamentary estates, so that if an intention to the contrary does not *clearly* appear, an interest will *always* be construed as vested rather than contingent. E. g. Uphaus v. Uphaus, Mo., 315 S.W.2d 801 (1958); McDougal v. McDougal, Mo.App., 279 S.W.2d 731 (1955); Bolles v. Boatmen's National Bank of St. Louis, 363 Mo. 949, 255 S.W.2d 725 (1953); St. Louis Union Trust Co. v. Herf, 361 Mo. 548, 235 S.W. 2d 241 (1951). See also, Blackhurst v. Johnson, 8 Cir., 72 F.2d 644, 647 (1934). As a corollary, appellee correctly states that the devise of a fee in terms, or by words necessarily describing an *absolute* estate, cannot be annulled except by language in the will, which expressly or by necessary implication arising from words equally clear and conclusive as those devising the fee, cuts down the previous devise of the fee. E. g. Thompson v. Smith, supra, 300 S.W.2d 404; Housman v. Lewellen, supra, 244 S.W.2d 21; Vaughan v. Compton, supra, 235 S.W.2d 328.

> "The intention to create an estate subject to a condition or qualification 'must be definitely and clearly shown by the use of apt and sufficient words' not inconsistent with the other words of the instrument." 235 S.W.2d at 331.

The Director asserts that a clause in a will which standing alone constitutes an "absolute" devise, can be limited by a subsequent clause, containing express, unambiguous language of equal force, clearness and strength as that used in the prior grant of the absolute title. E. g. Sorenson v. Booram, 317 Mo. 516, 297 S.W. 70, 71 (1927); Cox v. Jones, supra, 129 S.W. 495, 498, 499. And " * * * the antecedent *position* of a clause in a will alone does not make it override subsequent clauses" because "[t]he intention of the testator 'must be ascertained from the will as a whole'." Moran v. Sutter, 360 Mo. 304, 228 S.W.2d 682, 689 (1950).

We are also cited, pro and con, to a vast array of decisions, some from jurisdictions other than Missouri, and only a few of which deal with wills even remotely resembling the will here in question. Compare, for example, Shedd's Estate v. Commissioner of Internal Revenue, 9

Cir., 237 F.2d 345 (1956), cert. denied, 352 U.S. 1024, 77 S.Ct. 590, 1 L.Ed.2d 596 (1957); Farrell v. United States, S.D.Cal., 198 F.Supp. 461 (1961); Sorenson v. Booram, supra, 297 S.W. 70; Burnet v. Burnet, 244 Mo. 491, 148 S.W. 872 (1912); Dameron v. Lanyon, 234 Mo. 627, 138 S.W. 1 (1911); Cox v. Jones, supra, 129 S.W. 495, with Steele v. United States, D.Mont., 146 F.Supp. 316 (1956); Shaw v. Wertz, supra, 369 S.W.2d 215; Gehring v. Henry, Mo., 332 S.W.2d 873 (1960); Thompson v. Smith, supra, 300 S.W.2d 404; Schake v. Siem, Mo.Sup., 265 S.W.2d 338 (1954); Housman v. Lewellen, supra, 244 S.W.2d 21; Vaughan v. Compton, supra, 235 S.W.2d 328; and Bowles v. Shocklee, Mo.Sup., 276 S.W. 17 (1925). Although most of these cases are in varying degrees pertinent, by reason of the infinite variety of expression employed in wills, precedents are of less value in their construction than in any other field of inquiry. Even identical words justly receive different interpretations when set in variant contexts and used under different circumstances. Thompson v. Smith, supra, 300 S.W.2d at 406; Housman v. Lewellen, supra, 244 S.W.2d at 23; Moran v. Sutter, supra, 228 S.W.2d at 689.

With the foregoing rules and decisions in mind, we approach the construction of the will in controversy.

Standing alone, the first paragraph of Article Ten would unquestionably give Maude H. Lamar an *absolute* and *unconditional* title in the residue of her deceased husband's estate. Immediately following the first paragraph, however, and also within Article Ten, there are ten additional paragraphs under which the same property is granted to designated members of decedent's family in the event that Maude H. Lamar would either (a) die prior to the testator; (b) die simultaneously with the testator or as the result of a common accident or calamity; or (c) not survive the administration of testator's estate. As previously indicated, it is well settled in Missouri that "the devise of a fee in terms, or by

words necessarily describing an absolute estate, cannot be annulled *except* by later language in the will which expressly or by necessary implication, arising from words equally clear and conclusive as those in devising the fee, cuts down the previous devise of the fee." And this rule has been recognized as applicable wherein the first devise was "absolutely and in fee simple." See the discussion of the rule in Thompson v. Smith, supra, 300 S.W.2d at 405–406, citing Housman v. Lewellen, supra, 244 S.W.2d 21, and Vaughan v. Compton, supra, 235 S.W.2d 328. Accordingly, if the contingency and limitation that "[i]n the event * * * my wife * * * shall not survive the administration of my estate," plus the "gift-over" to designated persons in that event, is at least as clear and unambiguous as the devise to decedent's surviving spouse in the first paragraph, then the previous devise is made subject to the contingency, is a "terminable interest" within the meaning of § 2056(b) (1), and appellee is not entitled to the "marital deduction."

The phrase "administration of my estate" is unambiguous, and its meaning is firmly established in Missouri. State ex rel. Knisely v. Holtcamp, 266 Mo. 347, 181 S.W. 1007, 1010–1011 (1915); State ex rel. Lefholz v. McCracken, 231 Mo. App. 870, 95 S.W.2d 1239, 1241–1242 (1936). See also, United States v. Mappes, supra, 318 F.2d at 512. It is undisputed that administration of the estate was mandatory; the day of final administration was a day certain even though unascertainable at the precise moment of decedent's death; and it was problematical whether Maude H. Lamar would be living at the date of final administration. Cf. United States v. Quivey, supra, 292 F.2d at 255. Examination of Article Ten in the context of the entire will clearly reveals that decedent explicitly and unmistakably intended and provided that if his wife failed to survive the administration of his estate, her interest would terminate. With the same precision and clarity, decedent expressly provided for the devolution of the residue

in the event that this contingency occurred.

Of course, merely because decedent's wife was in fact alive on the date of final administration and the "gift-over" provisions thus were inoperative, does not change the nature, character and extent of the interest which passed to decedent's wife at the precise moment of his death. We cannot wait, like "Monday morning quarterbacks," to see what actually happened but must concern ourselves with what could have happened. See Kasper v. Kellar, supra, 217 F.2d at 746; United States v. Mappes, supra, 318 F.2d at 511; Shedd's Estate v. Commissioner of Internal Revenue, supra, 237 F.2d at 349.

Certainly, the contingencies that the testator imposed upon the devise to his wife were expressed in language equally as clear and strong as the prior devise of the interest itself. Furthermore—in contrast to many of the cases cited by appellee wherein the conflict was life estate v. fee simple—here the limiting language, rather than being irreconcilably inconsistent with the prior devise, actually evidenced an overall intention and plan to give a fee to testator's wife subject to certain contingencies which could in time be rendered inoperative.

Reverting again to the trial court's opinion, it appears that the court, being of the view that Missouri cases do not authoritatively settle the question, was strongly persuaded by its interpretation of Kasper v. Kellar, supra, 217 F.2d 744, on remand 138 F.Supp. 738 (D.S.D.1956). In Kasper, we remanded the case to enable the district court to determine whether, under South Dakota law, the property "vested undefeasibly" in the widow to whom it was devised and bequeathed, as of the time of the testator's death. 217 F.2d at 748.[1] Upon remand, the district court heard and considered expert testimony of outstanding members of the bar of South Dakota, carefully analyzed the questioned portions of the will in light of South Dakota law, and reached the conclusion that, " * * * under the wills-and-property law of South Dakota, the language used by Chambers Kellar in his will, and the intention and the circumstances involved, would be regarded as having had the legal effect of vesting and making undefeasible in the widow, as of the time of the testator's death, the property devised and bequeathed to her." 138 F.Supp. at 744. In our considered view, Kasper is distinguishable, principally because the district court there found that the clause "[i]f living at the time of the distribution of my estate" was ambiguous and was suspectible to one of four different meanings. Apparently it was this ambiguity which was responsible in part at least for the hearing of expert testimony as to the meaning of the will, it being well settled that extrinsic evidence of that nature is ordinarily inadmissible.

Here, the trial court also regarded § 473.260, V.A.M.S.[2] as supporting its conclusion that under the Lamar will the interest granted to the widow vested indefeasibly immediately upon testator's death. True it is that under the statute both personalty and realty pass to the persons to whom devised—or, in case of intestacy, to the heirs—upon the death of the owner, subject to the conditions enu-

1. In Kasper, as here, the question was whether the widow was entitled to a "marital deduction". Typical of the disputed portions of the Kellar will is the following language: "If either my wife or my son dies prior to the distribution of my estate, I give, devise and bequeath all of said rest, residue and remainder of my property and estate to the survivor of them * * *."

2. § 473.260, V.A.M.S. provides: "When a person dies, his real and personal proper- ty, except exempt property, passes to the persons to whom it is devised by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as his heirs; but it is subject to the possession of the executor or administrator and to the election of the surviving spouse and is chargeable with the expenses of administering the estate, the payment of other claims and allowances to the family, except as otherwise provided in this law."

merated in the statute.[3] But this codification of the law in regard to devolution of the decedent's property is of no assistance in determining the *nature* or *quantum* of the interest in the property which passes upon the decedent's death.

The facts and circumstances in United States v. Mappes, supra, 318 F.2d 508, reversing 208 F.Supp. 42 (W.D.Okla. 1962),[4] where the issue was also whether a widow was entitled to a "marital deduction," are remarkably similar to those of the instant case. While Mappes is not controlling because the court was there concerned with the construction of a will under Oklahoma law, it is nevertheless persuasive authority for the proposition that the interest of Mrs. Lamar in the property devised and bequeathed to her was defeasible and terminable and not subject to qualification for the "marital deduction." Insofar as is here material, the Mappes will provided:

> "I give, devise and bequeath to my wife, Lottie Mappes, if living at the time of my death, all of the remainder of my property, real, personal and mixed, wherever it may be situated."

In the next paragraph, this provision appears:

> "In the event that my wife should predecease me, *or should die before my estate has been administered*, then in that event I give, devise and bequeath to my sons, * * * all the remainder of my property * *."
> (Emphasis supplied).

The Tenth Circuit, in a soundly reasoned opinion, demonstrated the distinguishable features of Kasper v. Kellar, supra, 217 F.2d 744, on remand 138 F.Supp. 738, noted that in the instant case the trial court construed the conditional words of the Lamar will as a limitation upon the rights of the heirs to inherit or take under the will what the testator left at the time of his death, and reached the conclusion that "the critical language of our will [Mappes] purports to limit or condition the right of the spouse to take the property, even though it may also impose a limitation upon the rights of the sons to inherit. This language is, to be sure, inconsistent with the absolute devisement, but it is not irreconcilably so." 318 F.2d at 513.

We have carefully considered appellee's argument in her futile attempt to distinguish Mappes and to completely discount the force of the opinion. While, as noted, Mappes is not controlling, it cannot be gainsaid that the language in the Mappes will "or should die before my estate has been administered" is almost identical to the critical phrase around which the controversy herein is centered. We are satisfied that the construction of such language by the Tenth Circuit in the Mappes will is in harmony with the canons and rules of construction as enunciated by the Missouri courts.

■ In summary, we hold that the right of the widow to take the residue and remainder of testator's estate was conditioned by plain, clear and unambiguous language upon her surviving the administration of the estate, and that the conditional disposition created a "terminable interest" within the meaning of § 2056 of the 1954 Code, thereby defeating her right to the "marital deduction."

Judgment reversed.

---

3. For a discussion of the purpose of the statute, see William F. Fratcher, Trusts and Succession in Missouri, 27 Mo.L.Rev. 93, 109–110 (1962); Edward D. Summers, Revisor of Statutes, Introduction to 1955 Missouri Probate Code, Pamphlet —Vernon's Annotated Missouri Statutes, p. X.

4. The opinion of the trial court herein, while recognizing and considering the opinion of the United States District Court in Mappes v. United States, was filed prior to the decision of the court of appeals in United States v. Mappes, which, as noted, reversed the district court.